IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACEMLA DE PUERTO RICO, INC.; LATIN AMERICAN MUSIC COMPANY, INC.<br>Plaintiffs<br>vs<br>BANCO POPULAR DE PUERTO RICO, INC.; FUNDACION BANCO POPULAR, INC.; COMPANIES A to Z; JOHN DOE<br>Defendants | CIVIL 13-1822CCC |

**OPINION AND ORDER**

On September 30, 2015, the Court issued an Order granting a Motion for Summary Judgment filed by defendants Banco Popular de Puerto Rico (BPPR) and Fundación Banco Popular (Fundación) on January 20, 2015 (d.e. 32) and opposed by plaintiffs on March 13, 2015 (d.e. 50). Judgment was entered on that same date (d.e. 81). On October 30, 2015, the Court issued its Statement of Reasons: Findings of Fact and Conclusions of Law (d.e. 84) in which it found that plaintiffs' claims were barred by the statute of limitations with regard to the pre-2010 Christmas Specials and by res judicata/collateral estoppel as to the 2010 and 2012 Christmas Specials. Plaintiffs contended that songs (1) through (10) listed at page 2 of our Statement of Reasons were used in the 1995-2005 Christmas Specials, that the eleventh song, "Ojos Chinos," was used in the 2010 Christmas Special and the twelfth song, "Boricua en la Luna," was used in the 2012 Christmas Special. The limitations period established by the Copyright Act, 17 U.S.C. § 507(b), requires that a copyright claim must be

CIVIL 13-1822CCC                    2

commenced within three years after its accrual. A copyright claim accrues, pursuant to caselaw cited in the Statement of Reasons, when an infringing act occurs.

Regarding the limitations period as to songs (1) though (10), the Court reached the following conclusion:

> More importantly, plaintiffs have not controverted defendants' factual assertion regarding the sales of the Christmas Specials during the limitations period. **They did not submit any evidence that the 1995, 2001, 2004, and 2005 Christmas Specials were sold during the period from October 28, 2010, which is the earliest date for which they could recover for infringement.** Given that plaintiffs' evidence of infringing conduct is all dated earlier than October 28, 2010, their infringement claims related to the 1995, 2001, 2004, and 2005 Christmas Specials are time-barred.

d.e. 84, p. 6.  (Emphasis ours).

Regarding the claim preclusion/issue preclusion as to songs (11) and (12), the Court found that the decisions of this District in Latin Am. Music Co. v. Archdiocese of San Juan, 135 F. Supp. 2d 284, 303 (D.P.R. 2001) aff'd in part, rev'd in part Latin Am. Music Co., 499 F.3d 32 (1st Cir. 2007), barred re-litigation of the issue of plaintiffs' standing to sue for infringement of the song "Ojos Chinos" and that plaintiffs were precluded by the doctrine of collateral estoppel from suing defendants for its infringement.  Additionally, it was there noted that the Latin Am. Music Co. case had already been cited as a bar to a prior claim between plaintiff ACEMLA and Banco Popular for infringement of that same song, "Ojos Chinos."  See Banco Popular v. Latin Am. Music Co., Civil No. 01-1142, October 14, 2008 Opinion and Order, affirmed by the First Circuit in Banco Popular v. Asociación de Compositores

CIVIL 13-1822CCC                     3

y Editores de Música Latinoamericana, 678 F.3d 102 (1st Cir. 2012).  As to the song "Boricua en la Luna," the Court also found that plaintiffs were collaterally estopped from relitigating an infringement claim since their copyright ownership over this song had been litigated before and decided against them by way of a binding final judgment.  Plaintiffs were, therefore, collaterally estopped from relitigating that same issue.

The Statement of Reasons also points out that plaintiffs did not provide evidence that would be different from that already presented in earlier failed attempts to establish ownership and/or standing to sue regarding "Ojos Chinos" and "Boricua en la Luna."  The Court concluded that, even if plaintiffs could muster new evidence to establish an ownership claim, they would still have to establish that such new evidence was unavailable in the prior litigation.  It noted that plaintiffs had not even identified what different evidence they could submit in this litigation to show ownership and standing to sue over these two songs.

This brings us to the matter of attorney's fees pursuant to 17 U.S.C. § 505.  Defendants BPPR and Fundación requested that the Court award them reasonable attorney's fees for the work done by two law firms plus the cost of translations.  The Court's award order made reference to the Fogerty factors set forth in Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994), which states factors that may be considered, among others, when awarding attorney's fees under the Copyright Act:  "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of

CIVIL 13-1822CCC                             4

compensation and deterrence." The Court also made reference to First Circuit cases that had applied the Fogerty factors, even in the absence of frivolity or bad faith when the claim was simply "objectively weak." Invessys, Inc. v. McGraw-Hill, Cos., Ltd., 369 F.3d 16, [20-21] (1st Cir. 2004) and Mathews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998).  This notion of an "objectively weak" copyright infringement claim, in the context of an award of attorney's fees, was also discussed in Garcia-Goyco v. Law Environmental Consultants, Inc., 428 F.3d 14, 20-21 (1st Cir. 2005).

The September 26, 2016 Order awarding attorney's fees (d.e. 103) made reference to the fact that ten of the copyright claims were time barred and two were precluded by res judicata and collateral estoppel.  It specifically stated that the reasons for plaintiffs' copyright claims not surviving summary judgment "were readily accessible to plaintiffs well before the conclusion of discovery," yet the litigation lasted nearly three years.

Although plaintiffs did not file a separate Motion for Reconsideration, they submitted a Memorandum in Support of Motion for Reconsideration of Order Awarding Attorney's Fees on October 31, 2016 (d.e. 104) which raises the following arguments: (1) that the Court failed to apply the proper legal standard in deciding the motion for attorney's fees, (2) did not consider the effect that its ruling could have on plaintiffs' business and (3) improperly failed to consider whether defendants' billing rates were reasonable. Citing Kirtsaeng v. John Wiley & Sons, Inc., 136 S.Ct. 1979 (2016), plaintiffs invite the Court to consider the reasonableness of its position stating as an example of this that they "had a good faith basis to assert that there were ongoing and continuing sales of

CIVIL 13-1822CCC                              5

each Christmas Special that took place long after the year in which the special originally air[ed], and that those sales continued after the 2010 limitations date [and their] claims as to the ten songs precluded on statute of limitations grounds were thus neither objectively unreasonable nor frivolous." d.e. 104, at p. 6. They also assert that they had "good faith arguments in favor of their infringement claims for "Ojos Chinos" and "Boricua en la Luna" and restate their positions in opposition to summary judgment in support thereof. Id.

In Kirtsaeng, the Court discussed objective reasonableness as "an important factor in assessing fee applications – not the controlling one." Kirtsaeng, 136 S.Ct. at p. 1988. It referred to the other factors adopted in Fogerty v. Fantasy, Inc., 114 S.Ct. 1023 (1994) to guide a district court in awarding attorney's fees under section 505 of the Copyright Act, 17 U.S.C. § 505: frivolousness, motivation, objective unreasonableness and the need in particular circumstances to advance considerations of compensation and deterrence. Thus, all of these factors must be considered beyond the reasonableness of the parties' litigation positions.

Plaintiffs claim that the Court did not conduct an analysis of the objective reasonableness of their litigation position in its award of attorney's fees. As the Kirtsaeng Court observed in its discussion of objective reasonableness as an important yet not controlling factor in assessing fee applications in Copyright Act cases: "A district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." Id., at p. 1987.

CIVIL 13-1822CCC                     6

     The Court did not have before it any novel issues of fact or law in this case. Its Statement of Reasons: Findings of Fact and Conclusions of Law are strictly based on dates in which songs (1) through (10) were produced and broadcast on television during the 1995, 2001, 2004 and 2005 Christmas Seasons and dates when they were later sold by Banco Popular. d.e. 84, pp. 3-4. Likewise, the Court highlighted that plaintiffs did not offer any evidence to controvert the assertions made by Banco Popular that "the audio and/or film versions of the Christmas Specials were withdrawn from sale at bank branches and that Banco Popular had not sold the 1995, 2001, 2004 and 2005 Christmas Specials since before October 28, 2010 which is three (3) years before the filing of the complaint." The Court specifically made a factual finding that plaintiffs "had offered no evidence that the 1995, 2001, 2004 and 2005 Christmas Specials were sold within the three-year term immediately preceding the filing of the complaint." Id., at pp. 4-4. As to the statement by Raul Bernard that they have asked the Court to consider in determining the reasonableness of their litigation position, the Statement of Reasons in support of summary judgment expressly pointed out that "the Bernard statement (d.e. 50-1) is unsigned . . . neither Bernard who appears as the intended signatory nor anyone else has declared under penalty of perjury as to the facts mentioned in the statement." That unsigned Declaration of Raúl Bernard was filed on March 13, 2015 (d.e. 50-1). In conclusion, at page 6 of its Statement of Reasons, the Court determined that "given that plaintiffs' evidence of infringing conduct is all dated earlier than October 28, 2010, their infringement

CIVIL 13-1822CCC                            7

claims related to the 1995, 2001, 2004 and 2005 Christmas Specials are time barred."

The same fact-specific analysis based on the three-year statute of limitations was also conducted by the Court on the claim preclusion/issue preclusion as to songs (11) and (12), "Ojos Chinos" and "Boricua en la Luna", in the 2010 and 2012 Christmas Specials. The factual foundation of the preclusion argument is set forth in detail at pages 8 through 10 of the Statement of Reasons: Findings of Fact and Conclusions of Law (d.e. 84). Regarding the defense of res judicata or collateral estoppel, again the Court found that plaintiffs had not provided new evidence to establish their ownership claim nor had shown that new evidence was unavailable at the time of the first judgment in the previous cases in which they litigated and lost their ownership claim over "Boricua en la Luna."  The Court also found that plaintiffs were barred from relitigating the issue of their standing to sue for infringement of "Ojos Chinos."  These findings and the supporting reasons are set forth in detail, with citations to the prior cases litigated, at pages 8 through 11 at docket entry 84.

Accordingly, the Court's assessment is that plaintiffs did not advance a reasonable claim in this case.  Additionally, as acknowledged in <u>Kirtsaeng</u>, another factor to be taken into account beyond the reasonableness of the parties' litigating positions is the need to deter repeated instances of copyright claims as has happened in this case.  Having considered the relevant factors of deterrence and the unreasonableness of plaintiffs' litigation position, the Court reaffirms its award of attorney's fees in favor of defendants.

CIVIL 13-1822CCC                            8

We now address the two additional arguments which plaintiffs refer to as the Court's failure to consider the effect that this ruling could have on plaintiffs' business and the failure to consider whether defendants' billing rates were reasonable.  As to the first, plaintiffs disregard the fact that they did not raise in their Opposition to Defendants' Motion for Attorney's Fees filed on May 9, 2016 (d.e. 98) "their ability to pay the award without incurring financial ruin." They raise for the first time in their Memorandum of Law in Support of Motion for Reconsideration of Order Awarding Attorneys' Fees filed on October 31, 2016 (d.e. 104) the Court's failure to take into account plaintiffs' "financial capacity."  Despite not raising such a claim, they protest as to the Court's lack of consideration of such a factor.  To make things worse, plaintiffs have now resubmitted the Bernard's statement which they had previously filed on March 13, 2015 as docket entry 50-1, **unsigned**, in support of their opposition to defendants' Motion for Summary Judgment.  The Bernard Declaration filed on March 13, 2015 as docket entry 50-1 is identical as to its content and date (March 12, 2015) as the Bernard Declaration refiled on October 31, 2016 as docket entry 104-1.  The only difference is that his Declaration filed as docket entry 104-1 bears his signature which was affixed 19 months later.  In addition to these irregularities, the Bernard Declaration, now touted as evidence that "both plaintiffs operated at a loss during their most recent accounting year" (Motion for Reconsideration, d.e. 104 at p. 7), contains no such affirmation.  Both the unsigned and signed Bernard Declarations (d.e. 50-1 and d.e. 104-1) contain declarations of Raúl Bernard as president of ACEMLA and LAMCO strictly aimed at defeating the Motion for Summary

CIVIL 13-1822CCC                              9

Judgment filed by defendants. The Bernard Declaration, signed or unsigned, has nothing to do with the "devastating impact on plaintiffs' business" which they raise for the first time in reconsideration of the Court's Order awarding attorney's fees. Therefore, their argument that "the October 3 Order's failure to take this into account mandates reconsideration of that Order" (Motion for Reconsideration, d.e. 104 at p. 9) is meritless.

We reach plaintiffs' last ground in support of reconsideration, that is, that "the October 3 Order fails to properly determine whether defendants' billing rates were reasonable. Id., at p. 8. In this case, there are six attorneys listed at paragraph 5 of the Statement Under Penalty of Perjury in support of Motion for Attorney's Fees (d.e. 91-1) who worked in this case as attorneys for defendants Banco Popular de Puerto Rico and Fundación Banco Popular: (1) Nestor Méndez-Gómez, (2) María D. Trelles-Hernández, (3) Mariana Muñiz-Lara, (4) Bibiana Sarriera, (5) Diego Segurola and (6) Cristina Hernández. All of these are attorneys from Pietrantoni, Méndez & Alvarez, LLC (PMA). There are three paralegals from PMA listed: (1) Nory Sánchez, (2) Perla Campos and (3) Viviana Román.

There is a separate Unsworn Statement Under Penalty of Perjury (d.e. 91-3) filed on March 30, 2016 by Saldaña, Carvajal and Vélez-Rivé, PSC, signed by attorney Luis M. Saldaña-Román, as legal representative for Banco Popular de P.R. He states that attorney Miguel J. Ortega-Núñez, a junior partner at the law firm, was the counsel assigned to defend BPPR and that "the rates which we customarily charge for legal services of this nature are proper and reasonable." d.e. 91-3, paragraph 9.

CIVIL 13-1822CCC                    10

When the Court initially awarded attorney's fees, it noted that plaintiffs had raised no opposition to the reasonableness of the hourly rate reported by either law firm. Upon closer scrutiny of the statements filed by each law firm, the Court notes that the six attorneys from PMA who billed for services in this case, except for Segurola-Hernández, have claimed based on hourly rates ranging from a low to a higher fee. For example, Néstor M. Méndez-Gómez, Esq. billed a total of 50 hours and used three different hourly rates, that is, he billed 27.9 hours at $235/hour, 8.2 hours at $245/hour and 15 hours at $330/hour for different tasks, for a total amount of attorney's fees claimed of $13,152.50. María D. Trelles-Hernández, Esq., who signed the Declaration Under Penalty of Perjury (d.e. 91-1), billed based on an hourly fee range from $200/hour to $225/hour; specifically she billed 61.20 hours at $200/hour, 56.90 at $210/hour, 184.5 hours at $215/hour and 28.8 hours at $225/hour for a total of attorney's fees claimed of $70, 336.50. Attorney Bibiana-Sarriera reported a lowest hourly fee of $180/hour and the higher fee at $190/hour; 160.9 hours were billed at $80/hour and 29.60 hours at $190/hour, for a total amount claimed as attorney's fees for Ms. Sarriera of $34,016.00. Attorney Mariana Muñiz claimed attorney's fees from a range of $175/hour to $190/hour. She reported having worked 76.7 hours at $175/hour, 9.50 hours at $180/hour and 1.30 hours at $190/hour., for a total amount of attorney's fees claimed of $15,399.50 for her legal work. Attorneys Diego Segurola and Cristina Hernández, first-year associates at the law firm, described their work as providing assistance with research for the motion for attorney's fees. They reported 3.2 hours for Mr. Segurola and 9.1 hours for Ms. Hernández in

CIVIL 13-1822CCC					11

research related to the motion for attorney's fees at a fixed rate of $135/hour for each and a total amount claimed for their attorney's fees in the sum of $1,660.50.

Attorney Trelles-Hernández' Statement Under Penalty of Perjury (d.e. 91-1) contains a blanket statement at paragraph 19 which reads:

> The rates described for Mr. Mendez-Gomez, Ms. Trelles-Hernandez, Ms. Muniz-Lara, Ms. Sarriera, Mr. Segurola and Ms. Hernandez are reasonable and are lower than or equivalent to the rates charged by similar law firms for attorneys of this background and experience in this type of case.

As to the hourly rate, the unsworn Statement Under Penalty of Perjury signed by Mr. Luis M. Saldaña-Román (d.e. 91-3) also contains a general reference as to the reasonableness of the hourly rate charged. Paragraph 9 of that Statement reads:

> 9. I respectfully submit that the rates which we customarily charge for legal services of this nature are proper and reasonable, and consistent with rates charged by others experienced in federal litigation and the field of copyright infringement litigation.

The Court limits its scrutiny to the reasonable hourly rate issue since this is the only matter regarding the fee award that has been raised by plaintiffs in their Memorandum in Support of Motion for Reconsideration. Plaintiffs argue at page 9 of said Motion that our October 3, 2016 Order "fails to engage in any evaluation of the 'reasonable hourly rate' or the 'community's prevailing hourly billing rate' for similarly-experienced attorneys." Plaintiffs also point to defendants having provided "absolutely no evidence of what the hourly billing rate is "for similarly situated attorneys beyond conclusory and self-interested

CIVIL 13-1822CCC                    12

statements in their Declaration that the rates they were charging are reasonable.

Hourly rates are measured against the customary rate in the marketplace for comparably credentialed counsel. Spooner v. EEN, Inc., 644 F3d 62, 68 (1st Cir. 2011), citing Gay Officers Action League v. Puerto Rico, 247 F3d 288, 295-296 (1st Cir. 2001), United States v. One Star Class Sloope Sailboat Built 1930, 546. F3d 26, 40 (1st Cir. 2008). See also Blum v. Stenson, 465 U.S. 886, 895 (1984); Missouri v. Jenkins BY Agyei, 491 U.S. 274, 286 (1989).

In Bordanaro v. McLeod, 871 F2d 1151, 1168 (1st Cir. 1989), the Court stated:

> We believe that Blum v. Stenson, [465 U.S. 886, 895 (1984)] places a burden on a party requesting attorneys' fees to establish – by evidence other than his own attorneys' affidavits – the prevailing hourly rate in the community for comparable legal services.

It expanded on the Blum opinion quoting:

> To inform and assist the Court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence- in addition to the attorney's own affidavit – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to - for convenience – as the prevailing market rate.

The First Circuit cited the cases in which it had "consistently followed that teaching." Bordanaro, 871 F.2d at 1168. After Bordanaro, the Court decided Martinez Velez v. Rey Hernandez, 506 F3d 32, 47 (1st Cir. 2007) reaffirming the Blum teaching.

CIVIL 13-1822CCC                                    13

      Since the movants for attorney's fees, the law firms of PMA and SCVR, did not provide any information in the discharge of their burden of proving the prevailing market rates in our community, referring to the customary rates in the marketplace for comparably credentialed counsel, that is, rates prevailing for similar services by lawyers of comparable skills, experience and reputation, this information is necessary in order to reassess the reasonableness of the hourly rates of the different attorneys who billed for legal services to defendant. The law firms PMA and SCVR shall submit the necessary evidence that would allow the Court to make a ruling as to the reasonableness of the prevailing rates in the community in order to recalculate the lodestar amount.  As to the seven attorneys who worked in this case for the firm PMA and the one attorney who provided services in the law firm SCVR, they are expressly admonished that the information necessary for the Court to make the prevailing market rate determination within the standard established above has to be provided individually by such party and that they are not to provide ranges of hourly rate from a lower to a higher but simply the prevailing hourly rate that would apply in the case of each attorney without including different rates for one same attorney.  This is not a case in which differences in hourly rate result from out-of-court/in-court time since the case was disposed of by way of summary judgment without oral argument.  The information required from each attorney shall be provided to the Court by **AUGUST 18, 2017**.

      The Motion for Reconsideration (d.e. 104) lacks merit as to the grounds based on the reasonableness of plaintiffs' litigation position and the alleged failure of the Court to consider the economic impact upon plaintiffs of the fees

CIVIL 13-1822CCC                              14

award.  The third ground in support of reconsideration, the Court's failure to consider the reasonableness of the hourly rate charged by the attorneys, shall be ruled upon after the Court receives the information on prevailing market rates for similar work by comparably credentialed counsel.

    SO ORDERED.

    At San Juan, Puerto Rico, on July 26, 2017.

                                              S/CARMEN CONSUELO CEREZO
                                              United States District Judge